# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| John James Paystrup, | ) |
| Plaintiff, | ) **ORDER DENYING DEFENDANTS'** |
| | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |
| vs. | ) |
| | ) Case No. 1:18-cv-050 |
| Doman Farms Logistics, LLC, Nomarco Inc., and Thomas Doman, | ) |
| Defendants. | ) |

Before the Court is the Defendants' motion for summary judgment filed on October 18, 2019. See Doc. No. 24. Plaintiff John James Paystrup filed a response in opposition to the motion for summary judgment on November 8, 2019. See Doc. No. 31. The Defendants filed a reply brief on November 20, 2019. See Doc. No. 33. The Defendants are asking the Court to dismiss the remaining counts with prejudice. See Doc. No. 25, p. 1. For the reasons set forth below, the Defendants' motion for summary judgment is denied.

## I.  BACKGROUND

This case arises from the alleged formation of a business partnership to provide oil field services. See Doc. No. 1-1, p.1. Plaintiff John James Paystrup ("Paystrup") originally commenced this action in state court, and Defendants removed the action to federal court on March 9, 2018. See Doc. No. 1, 1-1, and 1-2. Defendant Doman Farms Logistics, LLC ("Doman Farms") is an Oregon limited liability company, and Defendant Nomarco, Inc. ("Nomarco") is an Oregon

1

corporation, both of which Defendant Thomas Doman ("Doman") is the principal owner.[1]  See Doc. No. 1-1, p.1.

In his original complaint, Paystrup alleged five claims: (1) declaratory action, (2) breach of loyalty, (3) actual fraud, (4) constructive fraud, and (5) unjust enrichment.  See Doc. No. 1-1, pp. 2-4.  Paystrup sought a declaration establishing a partnership between Doman and himself, as well as claims for breach of loyalty, actual fraud, constructive fraud against Doman, and unjust enrichment against all the Defendants.  Id.  On March 15, 2018, the Defendants brought a motion to dismiss the unjust enrichment claim, and the claims of actual and constructive fraud brought against Doman.  See Doc. No. 6, p. 1.  On September 7, 2018, the Court dismissed the claims of actual and constructive fraud because Paystrup failed to satisfy the heightened pleading standard of Rule 9.  See Doc. No. 17, pp. 8-9.  Paystrup's claims for declaratory action, breach of loyalty and unjust enrichment remain and are at the heart of Defendants' motion for summary judgment.  See Doc. No. 24.

In 2012, Doman Farms began hauling loads of frac sand for operators in the oil fields.  See Doc. No. 27-2, p.1.  Paystrup worked with Doman from 2012-2017, sometimes under the auspices of Doman Farms.  See Doc. 25, p. 2.  Paystrup recruited "clients and staff, maintained vehicles and equipment, dispatched trucks, oversaw numerous employees, and provided payroll and invoicing services."  See Doc. No. 1-1, p. 2.  In 2013, Paystrup obtained the ability to run trucks under his own authority, but after consulting with Doman, he decided to continue running trucks under Doman Farms' authority.  See Doc. No. 25, p. 2.  In his affidavit, Paystrup stated he did not run trucks under his own authority because Doman Farms was small at the time, and he and Doman wanted to "build" Doman Farms.  Id.

---

[1] The Court will collectively refer to Doman Farms, Nomarco, and Doman as "Defendants."

Doman Farms employed independent contractors for the trucking services. Id. Many independent contractors employed by Doman Farms were owner/operators of other trucking entities and contracted to haul loads for Doman Farms. Id. The independent contractors were paid on a "per-load basis, with a portion of the revenue reserved for Doman Farms." Id. The reserved revenue is referred to as a "Dispatch Fee." Id. The Dispatch Fee allowed independent contractors to receive approximately 85% of the revenue of a load, while the remaining 15% went to Doman Farms. See Doc. No. 25, p. 2. The Defendants maintain that Paystrup was compensated through the splitting of Dispatch Fees. See Doc. No. 26, p. 2. According to the Defendants, after Paystrup was compensated, any remaining profit and loss flowed back to Nomarco, Doman's construction business. See Doc. No. 25, p. 3. The Defendants contend Paystrup has not shared in any Doman Farms or Nomarco's profits. Id. Paystrup contends he split the Dispatch Fee 50/50, as profits, with Doman. See Doc. No. 31-1, p. 1.

The record demonstrates Doman and Paystrup reinvested their personal money into the venture. See Doc. 31-1, p. 2. Paystrup stated "we were putting most of the money back into the company." Id. According to Paystrup, he reinvested a total of $189,000 into Doman Farms to help with the cash flow issues in 2017. See Doc. 31-1, p. 5. Purchasing machinery and equipment was a mutual decision; Paystrup and Doman would purchase and own the equipment 50/50. See Doc. 31-1, p. 1. Eight of the trucks ran off Paystrup's credit card. See Doc. No. 31-1, p. 5. The equipment was maintained at Paystrup's shop and Paystrup's home was open to independent drivers for cooking and rest. Id.

It is undisputed that a formal partnership agreement did not exist between Paystup and the Doman. See Doc. 25, p. 3. It is also undisputed that Paystrup did not have the authority to sign checks on behalf of the Defendants, he did not have co-ownership of Defendants' bank accounts,

and he did not have the authority to sign loan documents, contracts, or other written agreements. Id. Although, Paystrup states he had access to the "company bank account" to pay credit cards. See Doc. No. 31-1, p. 2. Paystrup admits he has never been a shareholder or officer of either Doman Farms or Nomarco. See Doc. No. 25, p. 3. Neither a Form 1065 nor a schedule K-1, which is a return of partnership income, was ever filed by any of the Defendants during the five-year working relationship. Id. Nomarco gave Paystrup a Form 1099 for $200,000 in 2017. See Doc. No. 31-1, p. 7. However, Paystrup contends the 1099 is not representative of the money he earned nor of the money he put back into Doman Farms. See Doc. No. 31-1, p. 7. Paystrup maintains the reason his name is not on any of the entities is because he thought Doman did not pay taxes, and he did not want to be involved with tax fraud. See Doc. No. 31-1, p. 2. Paystrup admitted he never had any company liability in securing funds for the working relationship in an email to Doman. See Doc. No. 27-2.

According to Paystrup, Doman held Paystrup out as his partner and Paystrup referred to himself as "Managing Partner" to other individuals and entities. See Doc. No. 31-1, p. 2. Prior to 2017, Doman never denied being Paystrup's partner. Id. at p.3. In April of 2017, the Defendants withdrew their equipment and capital from the working relationship. See Doc. No. 31-1, p. 7.

In their pending motion for summary judgment, the Defendants request the Court declare that no partnership existed between Paystrup and Doman, and consequently Paystrup's remaining claims must be dismissed. The central issue before the Court is whether a partnership exists between Paystrup and Doman.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving

party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); See Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or whether the evidence is one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the Court of the basis for the motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

### III. **LEGAL DISCUSSION**

As previously noted, at the heart of the Defendant's motion is their contention a partnership between Doman and Paystrup did not exist. Under North Dakota law, a partnership is "an association of two or more persons to carry on as co-owners a business for profit." N.D.C.C. § 45-13-01(19). Two persons carrying on as co-owners of a for-profit business can form a partnership, whether or not the persons intend to. N.D.C.C. § 45-14-02(1). A partnership has three crucial elements: "(1) an intention to be partners; (2) co-ownership of the business; and (3)

5

a profit motive." Sandvick v. Lacrosse, 2008 ND 77, ¶7, 747 N.W.2d 519. All three elements must be present for a partnership to exist and not every business association forms a partnership. Ziegler v. Dahl, 2005 ND 10, ¶15, 691 N.W.2d 271. Here, the parties do not dispute Paystrup and Doman were working for a profit; therefore, the Court need not address that element. Therefore, the Court needs only to consider whether the intent to form a partnership existed and whether there was co-ownership of the business. "The existence of a partnership is a mixed question of law and fact, and the ultimate determination of whether a partnership exists is a question of law." Id., ¶11. The burden of proving a partnership exists rests with the individual claiming the existence of a partnership. Schlichenmayer v. Luithle, 221 N.W.2d 77, 82 (N.D. 1974).

### A.  INTENT

Doman contends a partnership did not exist because Paystrup and Doman lacked the intention to form a partnership. Paystrup contends even though a formal partnership agreement did not exist, the parties intended to form a partnership through their actions.

"One of the most important tests of whether a partnership exists between two persons is the intent of the parties." Ziegler, ¶14. Intent must be discerned from the evidence and can be derived from the actions the parties. Tarnavsky v. Tarnavsky, 147 F.3d 674, 677 (8th Cir. 1998); Gangl v. Gangl, 281 N.W.2d 574, 580 (N.D. 1979). The subjective intent of the parties is persuasive, but not conclusive, because two individuals may inadvertently create a partnership despite the express desire not to do so. Ziegler, ¶17. The parties "must intend to be part of a relationship that includes the other essential elements of a partnership, and to do things that further their co-ownership of a business of profit." Id.; Gangl, 281 N.W.2d at 580. Intent may be found despite the lack of a writing or oral expression evidencing an intent to form a partnership. Gangl,

281 N.W.2d at 580. Intent can be found by filing partnership tax returns, 50/50 profit/loss allocation, joint bank accounts and equipment, and borrowing money together. See Tarnavsky v. Tarnavsky, 147 F.3d 674, 677 (8th Cir. 1998); Cochell, 2010 WL 11627912 at *3-4; Ziegler, ¶19; Gangl v. Gangl, 281 N.W.2d 574, 581 (N.D. 1979).

The Court finds there are genuine issues of material fact in dispute as to whether Doman intended to form a partnership with Paystrup. It is undisputed Paystrup did not file a partnership tax return, co-own any bank accounts, or borrow money together. However, the way in which the Dispatch Fees were split and how revenue was shared is unclear. Both parties agreed the Dispatch Fee was split equally between them. However, the parties offer conflicting testimony characterizing how the Dispatch Fees were between Paystrup and Doman, with Doman asserting Paystrup did not share in the profits, while Paystrup asserting he did. Moreover, Doman has asserted Paystrup has not shared in the losses of the company. However, Paystrup stated he invested his own capital in the company to abate cash flow problems. Paystrup and Doman purchased multiple pieces of equipment together, splitting the cost equally. The affidavit submitted by Paystrup (Doc. No. 31-1) outlines in detail the facts which arguably support the argument that a partnership did exist between the parties. This Court is required to view those facts in a light most favorable to the party opposing the motion (Paystrup), and give that party all reasonable inferences to be drawn from those facts. The Court finds that an ambiguity exists regarding the issue of intent which creates a genuine issue of material fact, requiring denial of the Defendants' motion for summary judgment.

B. **CO-OWNERSHIP**

The Defendants contend Paystrup did not co-own the business through his admissions of not having authority to sign checks, lacking co-ownership of bank accounts, and not being an officer of any of the Defendant businesses. Paystrup contends he did have co-ownership because he managed day to day activities, shared in profits and some losses, and co-owned equipment with Doman. See Doc. No. 31-1.

Co-ownership is defined "by the sharing of profits and losses and the power of control over the management of the business." Cochell v. Pokorny Chiropractic Clinic, 2010 WL 11627912 at *3 (D.N.D. 2010) (citing Ziegler, ¶21). Control is an indispensable component of any co-ownership analysis. Id. The existence of shared control, or the right to share control, combined with profit sharing, is powerful evidence of the existence of a partnership. Id. (citing Gangl, 281 N.W.2d at 580; Tarnavsky, 147 F.3d at 678.).

The Court finds there are genuine issues of material fact in dispute as to whether there was co-ownership over the business. Paystrup was running the day-to-day management of the business by recruiting staff, maintaining company assets, dispatching trucks, and completing daily administrative tasks. Paystrup maintains he was managing the trucking company, while Doman was managing his construction company. Doman was often running Nomarco and let Paystrup handle the ins and outs of the trucking company, which is why most people thought of him as Doman's partner. As stated above, it is disputed as to how the money from the company was characterized; Paystrup contends he was sharing in profits from the Dispatch Fees, while Doman contends he was not. Paystrup and Doman jointly purchased multiple pieces of equipment for the business together, which arguably supports the view that Paystrup had some control over the business. Because Paystrup managed the daily business and there is ambiguity regarding the

characterization of the Dispatch Fees as a form of profit sharing, the Court finds a genuine issue of material fact exists which requires denial of the Defendants' motion for summary judgment at this stage. Further, the affidavit of Paystrup (Doc. No. 31-1) outlines in detail facts, which if viewed in a light most favorable to Paystrup, clearly create a multitude of genuine issues of material fact for a jury to resolve at trial.

### IV. <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. When the facts before the Court are viewed in a light most favorable to the party opposing the motion (Paystrup); and he is given the benefit of all favorable inferences to be drawn from those facts; there are genuine issues of material fact in dispute as to the issues of the intent of the parties and co-ownership of the business. For the reasons set forth above, the Defendants' motion for summary judgment (Doc. No. 24) is **DENIED.**

**IT IS SO ORDERED**

Dated this 6th day of March, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court